(30 Misc. Rep. 651.)

KERKER et al. v. LEDERER et al.

(Supreme Court, Special Term, New York County. March. 1900.)

1. THEATRICAL COMEDY—PRODUCTION—INJUNCTION PENDENTE LITE.
    Plaintiffs applied for an injunction pendente lite in a suit to restrain defendants from producing a comedy, and for an accounting under the contract by which defendants were given the exclusive right to produce the same, and which stipulated that, if they desired to exhibit the comedy beyond a certain time, they would notify plaintiffs; alleging that defendants had not paid certain royalties, or given such notice, and that the continued production of the play would cause plaintiffs irreparable damage. Defendants' affidavits alleged that plaintiffs had received royalties for the production of the play after the date on which they were required to give notice; that they were solvent, and owed no royalties, or had tendered the amount thereof; that they had prepared for the production of the play at a great expense, etc.,—and claimed their right to produce it was not dependent on the payment of royalties as they became due, and that an action for an accounting could not be maintained. Held, that plaintiffs' right to maintain the suit was not sufficiently clear, and their final success therein not so certain, as to justify the granting of the injunction.

2. SAME—CONTRACTS—CONDITION—WAIVER.
    Where a contract for the production of a comedy provided that if defendants desired to continue its production for a certain time, they should give plaintiffs notice of such intention on a certain date, and defendants continued to produce the comedy without such notice and plaintiffs received royalties therefrom, such condition was waived.

Action by Gustave S. Kerker and another against George V. Lederer and others to restrain the production of a musical comedy and for an accounting of royalties. Motion for injunction pendente lite. Motion denied.

Fromme Bros., for plaintiffs.

Ira Leo Bamberger, for defendants.

ANDREWS, J. This is a motion for an injunction pendente lite. The complaint alleges, in substance, the following facts: That the plaintiffs jointly composed the words and music of the musical comedy called the "Belle of New York," and granted the firm of Klaw & Erlanger the exclusive right to produce the same; that subsequently Klaw & Erlanger assigned their interest in the contract between them and the plaintiffs to the defendant Lederer, on the condition that said Lederer would transfer such interest to the defendant the George W. Lederer Company, and that he did so; that the play was afterwards produced by said company; that said company failed to pay certain royalties, and to give written notice of its intention to exhibit said comedy in the manner provided for in the contract between the plaintiffs and said Klaw & Erlanger; that the defendants are about to produce the play; and that such production will cause irreparable damage to the plaintiffs. The complaint then demands judgment that the said company be required to account to the plaintiffs for all such royalties, and that the defendants, and each of them, be restrained from producing the said comedy. It is not alleged in the complaint that the right so given by the plaintiffs to produce said play has been forfeited; nor does the complaint demand as relief that the contract between the plaintiffs and Klaw & Erlanger, which, it is alleged, was transferred to the said company, should be set aside and annulled; nor does it appear from the demand of judgment whether a temporary injunction merely is asked, or whether the plaintiffs also seek to obtain a permanent injunction.

The agreements between the plaintiffs and the defendants, so far as they are evidenced by written instruments, are contained in the following papers: First, an agreement between plaintiffs and said Klaw & Erlanger, dated May 4, 1897, by which the plaintiffs gave to Klaw & Erlanger the exclusive right to produce said comedy. This agreement, among other things, contains the following:

"(2) The first and second parties hereto [the plaintiffs Kerker and McLellan] give to the third parties the sole and exclusive right, privilege, and license to play, exhibit. and perform the said musical comedy in the United States and Canada for the period and on the terms hereinafter mentioned. (3) The said third parties [the defendants Klaw & Erlanger] shall have the exclusive license to said musical comedy from the 1st day of September, 1897, and as long there: ter as they may elect to play and exhibit the same. It is, however, understood that in case such third parties shall elect to exhibit the same after the theatrical season of 1897–98, they shall give written notice to said first and second parties of their intention so to do on or before the 1st day of July in the year commencing with the year 1898. Such written notice, sent to either the first or second party, to the last-known address of either, shall be deemed sufficient notice hereunder."

The second paper is in the form of a letter from the plaintiffs to Klaw & Erlanger, and is dated August 27, 1897. This letter is as follows:

"Gentlemen: We, the undersigned, Gustave S. Kerker and Chas. S. McLellan, hereby consent to release you from all obligations in connection

with the piece for which you hold a contract under the title of the 'Belle of the Bijou,' which is the same piece which is now called the 'Belle of New York,' and we give you permission to transfer the piece named to George W. Lederer, and release you from giving or paying to us any royalties accruing therefrom."

The third document is dated August 28, 1897, and is as follows:

"For value received we hereby assign within contract, with all its rights, interests, and privileges, to George W. Lederer [the contract referred to in said assignment being the above-mentioned contract between the plaintiffs and Klaw & Erlanger]."

The first ground upon which the plaintiffs claim that they are entitled to a temporary injunction is that the defendant Lederer has no right to produce said comedy because, before Klaw & Erlanger assigned their contract with the plaintiffs to him, he promised that he would immediately reassign the same to the defendant the George W. Lederer Company, and that he did so assign it. I do not see that it is of so much consequence whether the right to produce the play is vested in the defendant Lederer personally, or in the said Lederer Company, inasmuch as the plaintiffs seek to obtain an injunction restraining both Lederer and the Lederer Company from producing the play. However, the defendant Lederer denies that he ever agreed to transfer said contract to the Lederer Company, and denies positively that he ever did so assign it. He admits that the said company and several other companies did produce the play in the United States, Canada, and Great Britain, but he swears that such production was always under and by virtue of special and limited authority given by him, and that he himself "staged" the play, and lost more than $50,000 in producing it before its production became remunerative. No writing is presented, nor is it claimed that any writing exists, which tends to show that the defendant Lederer did transfer said contract to the said company or any one else, and he contends and insists that he is still the owner of said contract, and still has the exclusive right to produce the play and to authorize its production by others, which was given to Klaw & Erlanger by said contract, and which was assigned to him, with the consent of the plaintiffs.

The second ground upon which the plaintiffs claim that they are entitled to a temporary injunction is that a large amount of back royalties—which, as I understand the matter, they claim accrued in the year 1898—are still due from the defendant the Lederer Company. The defendants, however, in their answering affidavits, swear positively that no royalties are now due to the plaintiffs from either the defendant the Lederer Company or from the defendant Lederer himself, and they also swear that statements of the gross receipts from each performance of said play were rendered to the plaintiffs immediately thereafter, and that no claim was made during the year 1898 that such statements had not been rendered, nor that such statements were not full, true, and correct, nor that all the royalties shown thereby to be due had not been paid. It is also stated in the answering affidavits that an agreement was made between the plaintiffs and the defendant Lederer that the

latter should receive one-half of the moneys received from the publication of the music of the said comedy, and that said agreement has not been performed, and that there is now due from the plaintiffs to said Lederer a large amount of money by reason of such agreement; and it is insisted that, instead of the Lederer Company, or Lederer, being indebted to the plaintiffs, the plaintiffs are largely indebted to Lederer. It is alleged in the moving papers that the plaintiffs refused to consent that the said play should be produced in England until Williamson & Musgrove, of London, had agreed to guaranty the royalties which should accrue while the play was being performed in that country, and also that the plaintiffs refused to consent to the further production of the play in this country, after it had been produced in England, until such back royalties were paid; but all such allegations are positively denied in the answering affidavits. It is also contended on behalf of the defendants that, as a matter of law, the right to continue to produce the play is not dependent upon the payment of royalties as they became due from time to time, pursuant to the terms of said contract; also, that, as said contract contains no provision for its forfeiture or rescission in case the royalties therein provided for are not paid as they become due, and as there is no trust relation between the plaintiffs and the defendant Lederer, or the Lederer Company, this action, which is brought to obtain an accounting and an injunction restraining the production of the play, cannot be maintained, and that, if it be true that back royalties are now due and unpaid, the plaintiff's only remedy is by an action at law to recover the same.

The third ground upon which the plaintiffs claim that a temporary injunction should be granted is that no notice of an election to exhibit the play after the theatrical season of 1897–98, which is provided for in the third subdivision of the contract between the plaintiffs and Klaw & Erlanger, above referred to, was ever given. It is a sufficient answer to this claim that the play was produced by various companies in the United States and other countries, with the full knowledge of the plaintiffs, and that royalties were received by them until December, 1899, and under these circumstances they must be deemed to have waived the said provision of the contract requiring such notice to be given. The moving papers contain allegations to the effect that the defendant the Lederer Company is insolvent, and that the defendants Lederer and Schubert are of little or no pecuniary responsibility. Such allegations, however, are positively denied in the answering affidavits, and the defendants Lederer and Schubert both swear that they are both amply responsible, and will be able to pay any judgments which can be recovered against them, or either of them, by the plaintiffs, and the defendants charge that the action is not brought in good faith, for the reason that, although such back royalties are alleged by the plaintiffs to have been due ever since the year 1898, no action was brought to recover the same or to restrain the production of the play until just before it was to be again produced in the city of New York.

Other considerations are urged on behalf of·the defendants as reasons why the temporary injunction should not be granted. Some of them are that the production of said play requires the services of 75 artists, and that such artists have been actually employed; that large outlays have been required for various purposes in order to properly place the play upon the stage; that the cost of producing the play is not less than $7,000 a week; that engagements to produce the play in various parts of the United States have been entered into by the defendants; that, under these circumstances, a temporary injunction restraining the production of the play would involve the defendants in pecuniary troubles and other difficulties of a most serious character, and would cause them irreparable damage; and, further, that the defendants have tendered payment to plaintiffs for all the royalties which have accrued by reason of the present production of the play. I have given this matter most careful attention, and, while it cannot be said that the questions involved are free from doubt, I am inclined to the opinion that the contention of the defendants that this action cannot be maintained by the plaintiffs, and that the plaintiffs will not be finally successful, is well founded; and I am of the opinion that, at all events, the case presented by the plaintiffs is not sufficiently clear, and that the prospect of the plaintiffs' final success is not sufficiently certain, to justify me in granting the very severe and drastic remedy of a preliminary injunction,—especially so in view of the fact that, in the present condition of the calendar, the plaintiffs, if they wish, can have a speedy trial, upon which the facts can be better ascertained, and the rights of the parties better determined, than upon this application for a preliminary injunction.

I have also devoted considerable time to a consideration of the motion made by the defendants to strike 'out portions of the replying affidavits submitted on behalf of the plaintiffs, but I have found it exceedingly difficult to reach any satisfactory conclusion in regard thereto. The papers upon which the motion was originally made contain allegations of a general character to the effect that back royalties were due, and this appears to be the principal ground on which the motion was made. The defendants Lederer and the Lederer Company, in their answering affidavits, deny that any back royalties were due, and comment upon the fact that the plaintiffs did not state more specifically the amount of such back royalties, and when and how they became due; and also set up the fact that statements of gross receipts had been rendered from time to time, and that no objection had been made to the same, and that no claim had been made until recently that any back royalties were due; and the said defendants Lederer and the Lederer Company also set up a variety of other matters in their affidavits. The plaintiffs, in their answering affidavits, have apparently endeavored to meet such allegations and criticism contained in the affidavits submitted on behalf of said two defendants. I have found it impossible to separate the portions of the replying affidavits which might be properly inserted in the same from the other portions thereof, and I have, after some hesitation, concluded that said

motion must in all respects be denied. Motion for a temporary injunction will be denied, with $10 costs, and the order will be settled on notice.

Motion denied with $10 costs.